IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES A. WOLFE, | Civil No. 3:20-cv-1153 |
| Petitioner | (Judge Mariani) |
| v. | |
| JOHN E. WETZEL, *et al.*, | |
| Respondents | |

**MEMORANDUM**

Petitioner James Wolfe ("Wolfe"), an inmate currently confined at the State Correctional Institution, Huntingdon, Pennsylvania, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a decision of the Pennsylvania Board of Probation and Parole (the "Parole Board" or the "Board"). (Doc. 1). For the reasons discussed below, the Court will deny the habeas petition.

**I.   Background**

Wolfe is currently serving a sentence of 13 years, 4 months, and 27 days to 45 years, 5 months for homicide by vehicle while driving under the influence ("D.U.I."). (Doc. 1, p. 1; Doc. 11, pp. 15-18). His maximum sentence date is April 3, 2046. (Doc. 11, pp. 15-18). The Parole Board has denied Wolfe parole several times. (Doc. 2, p. 12; Doc. 11, pp. 20-29).

On December 6, 2013, the Parole Board denied Wolfe parole and advised him that he was denied parole for the following reasons: (1) his need to participate in and complete

additional institutional programs; (2) his institutional behavior, including reported misconducts; (3) his risk and needs assessment indicating his level of risk to the community; (4) reports, evaluations and assessments/level of risk indicates his risk to the community; (5) his failure to demonstrate motivation for success; (6) his minimization of the nature and circumstances of the offense(s) committed; (7) his lack of remorse for the offense(s) committed; and (8) the negative recommendation made by the prosecuting attorney. (Doc. 11, pp. 20-21, Notice of Board Decision dated December 6, 2013).

On May 17, 2016, the Board again denied Wolfe parole. The following factors were invoked by the Board to deny Wolfe parole: (1) his unsatisfactory supervision history; (2) reports, evaluations and assessments/level of risk indicates his risk to the community; (3) his minimization/denial of the nature and circumstances of the offense(s) committed; and (4) the negative recommendation made by the prosecuting attorney. (Doc. 11, pp. 22-23, Notice of Board Decision dated May 17, 2016).

On September 14, 2017, the Board denied Wolfe parole based on the following factors: (1) reports, evaluations and assessments/level of risk indicates his risk to the community; (2) his minimization/denial of the nature and circumstances of the offense(s) committed; and (3) his lack of remorse for the offense(s) committed. (Doc. 11, pp. 24-25, Notice of Board Decision dated September 14, 2017).

On May 8, 2018, the Board again denied Wolfe parole. The Board provided the following reasons to deny Wolfe parole: (1) his risk and needs assessment indicating his

level of risk to the community; (2) reports, evaluations and assessments/level of risk indicates his risk to the community; (3) his minimization/denial of the nature and circumstances of the offense(s) committed; and (4) his lack of remorse for the offense(s) committed. (Doc. 11, pp. 26-27, Notice of Board Decision dated May 8, 2018).

On May 21, 2019, the Board denied Wolfe parole based on the following reasons: (1) his risk and needs assessment indicating his level of risk to the community; (2) reports, evaluations and assessments/level of risk indicates his risk to the community; (3) his minimization/denial of the nature and circumstances of the offense(s) committed; (4) his lack of remorse for the offense(s) committed; and (5) the nature of the case and the balancing of interests presented here. (Doc. 11, pp. 28-29, Notice of Board Decision dated May 21, 2019).

On November 13, 2019, Wolfe filed a petition for writ of mandamus with the Commonwealth Court of Pennsylvania challenging the May 21, 2019 parole decision. (Doc. 1, p. 3; *see Wolfe v. Commonwealth of Pa.*, No. 624 M.D. 2019, 2020 WL 3256846 (Pa. Commw. Ct. June 16, 2020)). Wolfe alleged that a change in the Board's internal procedures to require five votes instead of two votes to grant parole to inmates convicted of D.U.I.-related homicide by vehicle violated the Ex Post Facto Clause of the United States Constitution, and he requested that the Commonwealth Court review the Board's denial of parole. (*Id.*). On June 16, 2020, the Commonwealth Court dismissed Wolfe's petition for writ of mandamus. *Wolfe*, 2020 WL 3256846.

On June 23, 2020, Wolfe filed the instant federal habeas petition. (Doc. 1). Wolfe argues that the Board's denial of parole was arbitrary and capricious and violates his constitutional rights. (*Id.*). Specifically, he alleges that: (1) a change in the Parole Board's internal procedures to require five votes instead of two votes to grant parole to inmates convicted of homicide by vehicle while driving under the influence violates the *Ex Post Facto* Clause of the United States Constitution; (2) he challenges the May 17, 2016 Board decision wherein the Board listed a reason not to grant parole based on his unsatisfactory supervision history; (3) the Board incorrectly classified him as a violent offender and a risk to the community; and (4) the Board did not rely on its presentence investigation report. (*Id.* at p. 5-10). For relief, Wolfe requests that the Court order a new parole hearing and instruct the Board to apply the correct law. (*Id.* at p. 14). The petition is ripe for disposition.

## II. Standard of Review

A challenge to the denial of parole is cognizable under 28 U.S.C. § 2254. *See Coady v. Vaughn*, 251 F.3d 480, 486 (3d Cir. 2001) (jurisdiction to entertain state prisoner's habeas petition challenging denial of parole lies under § 2254). However, a federal district court may not grant parole or determine parole eligibility. *Alex v. Gavin*, No. 1:14-cv-261, 2015 WL 8012825, at *1 (M.D. Pa. Dec. 7, 2015). Instead, "[t]he only remedy which the court can give is to order the Board to correct the abuses or wrongful conduct within a fixed period of time, after which, in the case of non-compliance, the court can grant the writ of habeas corpus and order the prisoner discharged from custody." *Id.* (quoting *Billiteri v. U.S.*

4

*Bd. of Parole*, 541 F.2d 938, 944 (2d Cir. 1976); *see also Bridge v. U.S. Parole Comm'n*, 981 F.2d 97 (3d Cir. 1992).

## III.  Discussion

### A.  Ex Post Facto Claim

The Ex Post Facto Clause of the Constitution states that "[n]o State shall . . . pass any . . . ex post facto Law." U.S. Const. art. I, § 10, cl. 1.  The Ex Post Facto Clause "applies to a statutory or policy change that 'alters the definition of criminal conduct or increases the penalty by which a crime is punishable.'" *Mickens-Thomas v. Vaughn*, 321 F.3d 374, 383 (3d Cir. 2003) (quoting *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 506 n. 3 (1995)).

"The ex post facto inquiry has two prongs: (1) whether there was a change in the law or policy which has been given retrospective effect, and (2) whether the offender was disadvantaged by the change." *Richardson v. Pa. Bd. of Prob. & Parole*, 423 F.3d 282, 287-88 (3d Cir. 2005).  The Supreme Court has noted that "[r]etroactive changes in laws governing parole of prisoners, in some instances, may be violative of [the Ex Post Facto Clause]." *Garner v. Jones*, 529 U.S. 244, 250 (2000).  This is because "[a]n adverse change in one's prospects for release [through parole] disadvantages a prisoner just as surely as an upward change in the minimum duration of sentence." *Mickens-Thomas*, 321 F.3d at 392.

Wolfe argues that the change in the Board's internal procedures to require five votes instead of two votes to grant parole to inmates convicted of D.U.I.-related homicide by vehicle violates the *Ex Post Facto* Clause. The Parole Board may have changed its policy regarding the requisite number of votes, but the record does not reflect that such a change disadvantaged Wolfe. Here, the Board's decisions are clear that it considered numerous factors as reasons for the parole denials. (*See* Doc. 11, pp. 20-29). Wolfe's challenge to the number of votes required by the Board does not alter the criteria the Board uses to determine parole eligibility and does not alter his original sentence. Consequently, Wolfe failed to satisfy his burden of showing that he was individually disadvantaged as a result of the parole denials. Moreover, the Pennsylvania Commonwealth Court determined that a change of internal Board policy increasing the number of affirmative votes required to grant a prisoner parole does not violate the Ex Post Facto Clause because such an increase is merely a procedural change that does not alter the criteria on which the Board determines parole eligibility or a prisoner's original sentence. *Myers v. Ridge*, 712 A.2d 791, 798 (Pa. Cmwlth. Ct. 1998). Therefore, Wolfe's ex post facto claim fails.

**B.   Equal Protection Claim**

The Equal Protection Clause guarantees all citizens "equal protection of the laws," meaning that similarly situated people must be treated the same. U.S. Const. amend. XIV. To state an equal protection claim a person must allege that: (1) he was a member of a protected class; (2) he was treated differently from similarly situated persons outside of his

protected class; and (3) the discrimination was purposeful or intentional rather than incidental. *See Tillman v. Lebanon County Corr. Facility*, 221 F.3d 410, 423-24 (3d Cir. 2000).

In order to successfully raise an equal protection claim, a plaintiff "must present evidence that s/he has been treated differently from persons who are similarly situated." *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003). In addition, in *Rowe v. Cuyler*, 534 F.Supp. 297, 301 (E.D. Pa. 1982), *aff'd*, 696 F.2d 985 (3d Cir.1982), the Court stated:

> [N]o two prisoners, being different human beings, will possess identical backgrounds and characters. Indeed, it is difficult to believe that any two prisoners could ever be considered 'similarly situated' for the purpose of judicial review on equal protection grounds of broadly discretionary decisions because such decisions may legitimately be informed by a broad variety of an individual's characteristics.

*Id.*

Wolfe alleges that his equal protection rights have been violated because other inmates convicted of more serious offenses have been granted parole. (Doc. 1, p. 8; Doc. 2, p. 12). This contention is insufficient to support an equal protection violation. Wolfe, as a convicted felon, is not a member of a suspect or quasi-suspect class with respect to an equal protection claim. *See Sanders v. Cty. of Bradford*, No. 3:11-cv-1723, 2013 WL 2435354, at *36 (M.D. Pa. June 4, 2013) (citing *Owens v. Ventura Cty. Superior Court*, 42 F.Supp.2d 993, 998 (C.D. Cal. 1999) ("Over the years, the federal courts have determined that suspect classes for equal protection purposes include classifications based on race, religion, alienage, national origin and ancestry.")). Further, as discussed below, the Parole

7

Board's decision denying parole listed reasons grounded in the Parole Board's legitimate discretion and it applied the appropriate factors established by the Pennsylvania Legislature. Thus, Wolfe has not demonstrated that he is entitled to habeas relief under the Equal Protection Clause.

### C.   Due Process Claim

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. It is well-settled that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," nor has the Commonwealth of Pennsylvania created such a right. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979); *see also Burkett v. Love*, 89 F.3d 135, 139 (3d Cir. 1996) (recognizing the general principle that the Pennsylvania parole statute does not create a liberty interest in the right to be paroled); *Coady v. Vaughn*, 770 A.2d 287, 289 (Pa. 2001) ("It is undisputed that [an inmate] does not have a clear legal right to the grant of parole, nor does the board have a corresponding duty to grant the same.").

The role of a federal court is confined to reviewing the substance of the state parole decision to determine whether the Parole Board exercised its authority in an arbitrary and capricious, or constitutionally impermissible manner. *Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980). Stated simply, the court must evaluate whether the Parole Board abused its discretion. In order to show a violation of substantive due process, the petitioner must

demonstrate that: (1) he was arbitrarily denied parole on the basis of impermissible reasons such as race, religion, or political beliefs; or (2) the Parole Board failed to apply appropriate, rational criteria in reaching its determination. *Id.* at 236. "However, federal courts are not authorized by the due process clause to second-guess parole boards and the requirements of substantive due process are met if there is some basis for the challenged decision." *Coady*, 251 F.3d at 487. The "relevant level of arbitrariness required to find a substantive due process violation involves not merely action that is unreasonable, but, rather, something more egregious, which we have termed at times 'conscience shocking' or 'deliberately indifferent.'" *Hunterson v. DiSabato*, 308 F.3d 236, 247 (3d Cir. 2002) (citation omitted).

Here, Wolfe challenges the Parole Board's May 17, 2016 denial of parole. (Doc. 1, pp. 6-7). On May 17, 2016, the Parole Board filed a Notice of Board Decision, in which they advised Wolfe that he was denied parole for the following reasons:

- Your prior unsatisfactory supervision history.

- Reports, evaluations and assessments/level of risk indicates your risk to the community.

- Your minimization/denial of the nature and circumstances of the offense(s) committed.

- The negative recommendation made by the prosecuting attorney.

(Doc. 11, pp. 22-23, Notice of Board Decision dated May 17, 2016).

The Board further noted that at Wolfe's next interview, the Board would review Wolfe's file and consider:

9

- Whether you have maintained a favorable recommendation for parole from the Department of Corrections.

- Whether you have maintained a clear conduct record.

(*Id.*).

Wolfe has not established that the May 17, 2016 denial of parole amounted to an unreasonable exercise of the Parole Board's discretion. Rather, it is apparent from the arguments raised in Wolfe's filings that he merely disagrees with the criteria the Parole Board relied upon to deny him parole. (*See* Doc. 1). However, this challenge to the Parole Board's administrative decisions to deny Wolfe parole release is unavailing. *See* 61 Pa. C.S. § 6137 (granting the Parole Board vast discretion to refuse or deny parole). The record clearly reflects that the Parole Board based its parole determinations on factors that it is statutorily required to consider in accordance with 61 Pa. C.S. § 6135. *See McGinnis v. Royster*, 410 U.S. 263, 277 (1973) (holding that there is a "legitimate desire of the state legislature to afford state prison officials an adequate opportunity to evaluate both an inmate's conduct and his rehabilitative progress before he is eligible for parole"). Under 61 Pa. C.S. § 6135, the Parole Board must evaluate, among other factors: (1) the nature and circumstances of the offense; (2) any recommendations made by the trial judge and prosecuting attorney; (3) the general character and background of the inmate; (4) the notes of testimony of the sentencing hearing, if any, together with such additional information regarding the nature and circumstances of the offense committed for which sentence was

imposed; and, (5) the conduct of the person while in prison and his physical, mental and behavioral condition and history and his complete criminal record.

Wolfe has not directed the Court to any factor relied upon by the Parole Board that could be described as conscience shocking or deliberately indifferent. The Parole Board appropriately relied on a combination of factors to deny Wolfe parole. Wolfe chooses to challenge specific nuances of the Board's rationale; hence, he merely disagrees with the Board's conclusions, not the Board's criteria for evaluation. For example, he acknowledges that he was denied parole, but disagrees with the Board's description of Wolfe's "unsatisfactory supervision history" and his classification as a "risk to the community." (*See* Doc. 1, p. 6). His challenges to the Board's rationale relate to factual disagreements, which do not equate to conscience shocking or deliberate indifference giving rise to a substantive due process claim. Therefore, because Wolfe has failed to meet his burden of demonstrating that the Parole Board abused its discretion, the Court will deny the instant petition for a writ of habeas corpus.

## IV. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c)(1)(A), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree

11

with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322 (2003). Because reasonable jurists could not disagree with the resolution of this petition, there is no basis for the issuance of a COA. Thus, the Court will decline to issue a certificate of appealability, as Wolfe has failed to demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

## V.     Conclusion

In accordance with the foregoing, the Court will deny Wolfe's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. (Doc. 1). A separate Order shall issue.

_____
Robert D. Mariani
United States District Judge

Dated: December ___, 2021